UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Anthony Michael Watson, | Court File No. |
| Plaintiff, | |
| vs. | COMPLAINT WITH JURY DEMAND |
| Hennepin County; and Sheriff's Deputy Nick Peterson and Sheriff's Deputies J. Does 1-7, in their individual and official capacities, | |
| Defendants. | |

# INTRODUCTION

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and Minnesota state law.

# JURISDICTION

2. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law pursuant to 28 U.S.C. § 1367.

# VENUE

3. This Court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the material events and occurrences giving rise to Plaintiff's cause of action occurred within the State of Minnesota.

# PARTIES

4. Plaintiff Anthony Michael. Watson ("Mr. Watson") is an individual person of full age and a resident of the State of Minnesota.

1

5. Defendant Hennepin County is a division of the State of Minnesota and the public employer of the individual Sheriff's Deputy Defendants. Hennepin County is sued directly and also on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02, for the actions of its deputies and officials.

6. Defendant Nick Peterson ("Dep. Peterson") and J. Does 1-7, whose identities are unknown at this time, hereinafter known collectively as "Deputies," were at all times relevant to this complaint duly appointed and acting Sheriff's Deputies employed by Hennepin County, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or Hennepin County.

## FACTS

7. On April 8, 2020 at about 5:00 pm, Mr. Watson was a passenger in a car being driven by his fiancé, A.B. He was sitting in the front passenger seat. A.B.'s mother was sitting in the passenger side back seat, behind Mr. Watson. A.B is a postal worker and was in her uniform at the time.

8. The group was driving in downtown Minneapolis on their way home when they were pulled over by an unmarked black SUV. The law enforcement officers who approached their vehicle were in all black tactical uniforms but identified themselves as Hennepin County Sheriff's Deputies. Two other vehicles arrived, an unmarked vehicle and a marked Hennepin County Sheriff's Office squad car. In total, eight Sheriff's Deputies were at the scene.

9. A.B. asked why they were pulled over. One of the two Deputies on the driver's side told her, "You look like you were having too much fun" then claimed that the car's tail light was out.

10. One of the Deputies on the driver's side asked for license and insurance, then reached into the vehicle and took the keys. A.B. was then asked to get out of her vehicle.

11. There were two Deputies on the passenger side of the A.B.'s vehicle. One asked Mr. Watson for identification. Mr. Watson attempted to film the stop on his cellular telephone. A Deputy grabbed the telephone from his hand and placed it on the hood of the car.

12. Mr. Watson was told to step out of the vehicle but before he could, the Deputies opened the door, pulled him out of the front seat and pushed him into the front quarter panel of the car. They placed him in handcuffs, searched his pockets and removed his state-issued identification card. His identification card includes his full name, including middle name, and his date of birth.

13. While this was happening, Defendant Dep. Peterson, who was detaining A.B., began asking her questions about where she worked. He then took her picture on his personal cellular telephone.

14. During this time, Mr. Watson kept asking Deputies why he was being arrested. He was on probation at the time and knew that if he had any outstanding warrants, his probation officer would have made him aware of them. He repeatedly told Deputies "You have the wrong guy." A Deputy told him, "Shut up. You'll find out when you go to jail."

15. Deputies then told A.B. that if she did not drive away immediately, they would arrest her for obstructing the legal process. A.B. left so quickly that Mr. Watson's cell phone and wallet flew off the hood of the car about a block away and she had to stop to retrieve them.

16. A.B. went to the Hennepin County Jail to learn why Mr. Watson was arrested and what charges he was being held on. She was told that Mr. Watson was arrested on five counts of domestic assault and told there would be no bond.

17. Mr. Watson was taken into the sallyport of the jail. He was held there for approximately two hours. Deputies took him in and out of the squad car repeatedly, walking him up to the

3

intake area, then back into the squad car. Deputies eventually saw his tattoos and said "This is the wrong guy."

18. Mr. Watson heard the Deputies talking to the jail intake Deputy about someone being dead. He later found information on the internet about a 45-year-old African American man named Anthony Demetrius Watson who had been killed.[1] Mr. Watson is white and was 28 years old at the time.

19. Defendant Dep. Peterson and another Deputy put Mr. Watson back into the squad. They were demonstrative about strapping on their firearms. They began driving Mr. Watson away from the jail. Mr. Watson asked where he was being taken. Deputies told him "What? You never got your ass beat before going to jail?" Mr. Watson began trembling in fear. He was terrified about what would happen next.

20. After a few minutes, the Defendant Dep. Peterson told Mr. Watson, "We're going to do you a solid and release you" and requested A.B.'s telephone number so she could meet them at a convenience store to pick him up. He remained handcuffed the entire time, until he was finally removed from the squad car at the convenience store.

21. At the convenience store, Defendant Dep. Peterson gave Mr. Watson his business card and said, "If you know anyone with guns or drugs, I'll pay you from my personal bank account for the information." Mr. Watson was finally allowed to leave with A.B.

22. Mr. Watson was very shaken by the incident. He was diagnosed with post-traumatic stress disorder as a result of the incident and he began seeing his therapist more frequently for treatment.

23. Approximately a week after the incident, Mr. Watson attempted to acquire a copy of the incident report of his encounter with Defendant Deputies. He went to the Hennepin County

---

[1] https://www.cbsnews.com/minnesota/news/officers-investigating-fatal-stabbing-on-blue-line-train/

Sheriff's Office and requested the report. However, he left when a group of eight or nine deputies came out of the back office and started putting on gloves, trying to intimidate him.

24. As a result of Defendants' actions, Mr. Watson suffered deprivation of freedom and liberty, was detained for approximately 3 hours, suffered harm to his reputation, experienced psychological trauma and distress, and suffered diminished quality and enjoyment of life.

## CLAIMS FOR RELIEF

### COUNT 1: 42 U.S.C. § 1983 – FOURTH AMENDMENT UNREASONABLE SEARCH, SEIZURE AND FALSE ARREST AGAINST DEFENDANTS PETERSON AND J. DOES 1-7

25. Paragraphs 1 through 24 are incorporated herein by reference as though fully set forth.

26. Based on the above factual allegations, Defendants, through their actions, acting under the color of state law, violated Plaintiff's constitutional right to remain free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution when they detained Plaintiff without reasonable suspicion, searched his person without legal justification, and arrested Plaintiff without probable cause or other legal justification.

27. As a result of these constitutional violations, Plaintiff suffered damages as aforesaid.

### COUNT 2: 42 U.S.C. § 1983 – FOURTH AMENDMENT UNREASONABLE SEIZURE AND FALSE ARREST (*MONELL* VIOLATION) AGAINST DEFENDANT HENNEPIN COUNTY

28. Paragraphs 1 through 24 are incorporated herein by reference as though fully set forth.

29. Prior to January 23, 2020, Defendant Hennepin County developed constitutionally deficient training practices with respect to the execution of arrest warrants and identification of the subjects of the warrants. Specifically, Hennepin County failed to train its Deputies to properly identify individuals who are the subjects of the warrants, including visual identification.

5

30. The County's deficient training program was the cause of the violations of Plaintiff's constitutional rights alleged herein.

31. As a result of these constitutional violations, Plaintiff suffered damages as aforesaid.

### COUNT 3: NEGLIGENCE AGAINST ALL DEFENDANTS UNDER MINNESOTA STATE LAW

32. Paragraphs 1 through 24 are incorporated herein by reference as though fully set forth.

33. Based on the above factual allegations, Defendants owed Plaintiff a duty of reasonable care to follow standard police protocols and Hennepin County Sheriff's Office Policies and Procedures to refrain from detaining or arresting individuals without reasonable suspicion/probable cause and to properly verify identity of individuals by name, age, race, and other identifying marks prior to making a warrant arrest. Defendants breached this standard of care in their interactions with Plaintiff and, in doing so, violated standard police protocols as well as Hennepin County Sheriff's Office Policies and Procedures.

34. Defendant Hennepin County is vicariously liable to Plaintiff for the Defendant Deputies' negligence.

35. As a direct and proximate result of this negligence, Plaintiff suffered damages as aforesaid.

### RELIEF REQUESTED

**WHEREFORE, Plaintiff requests that this Court grant the following relief:**

a. Issue an order granting Plaintiff judgment against Defendants on all counts set forth above;

b. Award of compensatory damages to Plaintiff against all Defendants, jointly and severally;

c. Award of punitive damages to Plaintiff against all Defendants, jointly and severally;

d. Award of reasonable attorney's fees and costs to Plaintiff pursuant to 42 U.S.C. § 1988;

e. Award of such other and further relief as this Court may deem appropriate.

**THE PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**

                                  THE LAW OFFICE OF ZORISLAV R. LEYDERMAN

Dated: August 3, 2022              By: s/ Zorislav R. Leyderman
                                            ZORISLAV R. LEYDERMAN
                                            Attorney License No. 0391286
                                            Attorney for Plaintiff
                                            The Law Office of Zorislav R. Leyderman
                                            222 South 9th Street, Suite 1600
                                            Minneapolis, MN 55402
                                            Tel: (612) 876-6626
                                            Email: zrl@ZRLlaw.com